**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JACK BRADLEY, | ) | Case No. |
| | ) | |
| *Plaintiff,* | ) | Judge |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | |
| FASAI CHAINUVATI, | ) | |
| | ) | |
| *Defendant.* | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Jack Bradley, for his Complaint against Defendant Fasai Chainuvati, states as follows:

**Introduction**

1.    Plaintiff Jack Bradley brings this case because Defendant Fasai Chainuvati defamed Mr. Bradley to sabotage his promising architecture career and unlawfully gain an advantage in her own architecture career. Mr. Bradley and Ms. Chainuvati are classmates in the University of Pennsylvania's ("Penn's") architectural graduate program. Mr. Bradley and Ms. Chainuvati received internship offers at the same world-renowned architectural firm in Los Angeles for the summer of 2025. Ms. Chainuvati was concerned that Mr. Bradley would ultimately receive a permanent job offer from the firm instead of her. In response, Ms. Chainuvati defamed Mr. Bradley to Penn and to the architectural firm, which resulted in Mr. Bradley's internship being revoked and his academic, personal, and professional career and reputation being damaged. Mr. Bradley asks this Court to remedy and help restore his reputation and career that Ms. Chainuvati has maliciously harmed.

**The Parties**

2.      Plaintiff Jack Bradley ("Mr. Bradley") is an individual and a citizen of the State of Ohio. Mr. Bradley was born and raised in northeast Ohio. Mr. Bradley has had a strong interest in architecture since he was in high school.

3.      Defendant Fasai Chainuvati ("Ms. Chainuvati") is an individual foreign national and a citizen of Thailand.

**Jurisdiction and Venue**

4.      This Court has Subject Matter Jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the controversy is between Mr. Bradley, who is a citizen of Ohio, and Ms. Chainuvati, who is a citizen or subject of Thailand, establishing complete diversity of citizenship; and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within the Eastern District of Pennsylvania.

**The Facts**

**Mr. Bradley has been a Good Friend and Classmate of Ms. Chainuvati**

6.      Mr. Bradley and Ms. Chainuvati are architectural graduate students at the Stuart Weitzman School of Design at Penn.

7.      Penn is a private university located in Philadelphia, Pennsylvania.

8.      Mr. Bradley and Ms. Chainuvati first met at Penn's orientation in the fall semester of 2023.

9.      Mr. Bradley and Ms. Chainuvati became friends soon after meeting.

10.    Mr. Bradley and Ms. Chainuvati had a brief romantic relationship beginning in or around December 2023.

11.    Mr. Bradley and Ms. Chainuvati decided to end their romantic relationship and remain friends in or around late December of 2023 or early January of 2024.

12.    Mr. Bradley shared classes with Ms. Chainuvati, and the two worked well together.

13.    For instance, in a class during the fall semester of 2024, Mr. Bradley and Ms. Chainuvati worked together on a group project, which went smoothly. In another class during the spring semester of 2025, Mr. Bradley and Ms. Chainuvati worked on another group project, which also went smoothly.

14.    Ms. Chainuvati and Mr. Bradley would work on projects at Ms. Chainuvati's home and use that time to socialize as well.

15.    Ms. Chainuvati asked Mr. Bradley to do her favors, and Mr. Bradley obliged.

16.    For instance, in January 2025, Ms. Chainuvati asked Mr. Bradley to enter her apartment while she was away and to ship her camera and laptop to her in Thailand. Mr. Bradley agreed to retrieve and ship the laptop and camera to Ms. Chainuvati, and ultimately shipped Ms. Chainuvati her camera, as she no longer needed her laptop.

17.    Mr. Bradley supported Ms. Chainuvati in her extracurricular activities.

18.    In March 2025, Ms. Chainuvati invited Mr. Bradley and a few other mutual friends to New York City to support her run at the New York City Half Marathon.

19.    Mr. Bradley traveled to the New York City Half Marathon to support Ms. Chainuvati, and Ms. Chainuvati thanked Mr. Bradley for his support.

3

**Mr. Bradley and Ms. Chainuvati Obtain Internships at the Same Architectural Firm**

20.     Mr. Bradley and Ms. Chainuvati applied to architectural internships for the summer of 2025.

21.     Internships are important to architectural graduate students because they provide practical experience to students, allow them to earn income, and can lead to permanent jobs after graduation from graduate school. Additionally, the hours spent working at an internship count toward the required experience hours needed for a person to earn an architecture license.

22.     Ms. Chainuvati applied for a 2025 summer internship at MAD Architects ("MAD") in Los Angeles, CA.

23.     MAD Architects is a well-known, award-winning architectural design firm with projects throughout the United States and the World. MAD has an office in Los Angeles, California.

24.     MAD offered a 2025 summer internship to Ms. Chainuvati, and she accepted.

25.     On March 7, 2025, Ms. Chainuvati informed Mr. Bradley that she had been offered a summer internship with MAD for the summer of 2025.

26.     Ms. Chainuvati texted Mr. Bradley and told him to "[a]pply to LA please[,]" referencing applying to architecture internships in the Los Angeles area.

27.     On March 19, Mr. Bradley had an interview with a Philadelphia architecture firm, for a potential summer internship.

28.     Around this same time, Ms. Chainuvati specifically encouraged Mr. Bradley to apply for an internship at MAD via text messages, writing that she "[b]et [he] could still apply" because representatives of MAD were "off to a slow start and haven't reached out to other interns yet[.]"

29.     Ms. Chainuvati provided instructions to Mr. Bradley via text messages regarding the process of applying to MAD.

30.     On April 3, a Philadelphia architecture firm offered Mr. Bradley an internship, which he initially accepted.

31.     Mr. Bradley also applied for a 2025 summer internship with MAD, MAD offered a 2025 summer internship to Mr. Bradley, and he accepted.

**Ms. Chainuvati Wanted Mr. Bradley to Decline the MAD Internship because She Thought MAD Would Offer Him, but Not Her, a Permanent Job**

32.     On April 10, 2025, Mr. Bradley informed Ms. Chainuvati that MAD had offered him a 2025 summer internship.

33.     Initially, Ms. Chainuvati expressed that she was happy for Mr. Bradley.

34.     Ms. Chainuvati told Mr. Bradley that she had put in a good word for Mr. Bradley to a Penn professor and had asked the professor to put Mr. Bradley's name forward to MAD as a candidate.

35.     Soon after, though, Ms. Chainuvati called again and expressed to Mr. Bradley that she was "worried" about a mutual friend that had not yet had any internship offers, while Mr. Bradley had two offers.

36.     On April 13, 2025, Mr. Bradley informed Ms. Chainuvati that he intended to withdraw his acceptance of the Philadelphia architecture firm internship and accept MAD's offer instead.

37.     On April 14, 2025, Mr. Bradley withdrew his acceptance of the Philadelphia architecture firm internship.

38.     Mr. Bradley accepted the 2025 summer internship with MAD because he felt that this internship was the better choice for him, personally and professionally.

39.     Around this time, Ms. Chainuvati called Mr. Bradley and expressed that she was angry and upset that he had accepted the MAD internship.

40.     Ms. Chainuvati told Mr. Bradley that she did not want him to work at MAD.

41.     Ms. Chainuvati told Mr. Bradley that she did not want him to work at MAD because he would be a more attractive job candidate than her.

42.     Ms. Chainuvati told Mr. Bradley that she thought he would push her out of a job with MAD.

43.     Ms. Chainuvati told Mr. Bradley that she wanted to enjoy Los Angeles with a better work-life balance, and that Mr. Bradley would work all the time, making her look bad to MAD.

44.     Ms. Chainuvati repeatedly said she felt that Mr. Bradley would be more likely to be hired for a permanent job by MAD than she would.

45.     After the phone call, Ms. Chainuvati texted Mr. Bradley and apologized for being "imposing" on the phone and for saying "mean" things that "hurt" Mr. Bradley.

46.     In the text message exchange, Ms. Chainuvati told Mr. Bradley that she had anxiety and that he was to blame because he had accepted the MAD offer.

47.     In the text message exchange, Ms. Chainuvati told Mr. Bradley that he could "defer [the MAD internship] to next year" and that he did not "have to be there when [she was] there[,]" emphasizing that Mr. Bradley previously had another internship offer for the summer.

48.     Then, during an April 19, 2025 phone call, Ms. Chainuvati falsely accused Mr. Bradley of harassing her.

49.     After Ms. Chainuvati falsely accused Mr. Bradley of harassing her, he initiated no further communication with Ms. Chainuvati.

**Ms. Chainuvati Falsely Accuses Mr. Bradley of Harassment and Stalking and Defames Him to Penn and MAD**

50.     After Mr. Bradley had told Ms. Chainuvati that he had accepted the 2025 summer internship with MAD, Ms. Chainuvati made false statements to Penn's Office of Student Intervention Services falsely accusing Mr. Bradley of stalking and harassing her.

51.     Mr. Bradley did not stalk Ms. Chainuvati.

52.     Mr. Bradley did not harass Ms. Chainuvati.

53.     Ms. Chainuvati lied to Penn representatives by claiming that Mr. Bradley's attendance at the New York City Half Marathon was an instance of him "following" her, while purposely omitting the fact that she had invited him to support her and thanked him for his attendance.

54.     Text messages confirm that Ms. Chainuvati invited Mr. Bradley to New York to watch her race.

55.     Ms. Chainuvati lied to Penn representatives by falsely representing that Mr. Bradley had "followed" her to Trader Joe's, when Ms. Chainuvati and Mr. Bradley had in fact gone to the store together shortly after she invited him to a study session at her apartment.

56.     Ms. Chainuvati lied to Penn representatives by falsely claiming that Mr. Bradley had "followed" her to a local Starbucks frequented by many Penn architecture graduate students.

57.     Ms. Chainuvati acted, at least, intentionally when she made these false statements to Penn in order to obtain documentation that she would use to cause Mr. Bradley's internship with MAD to be revoked and to harm his career.

58.     In the alternative, Ms. Chainuvati acted maliciously and in bad faith when she made these false statements to Penn in order to obtain documentation that she would use to cause Mr. Bradley's internship with MAD to be revoked and to harm his career.

59.    Ms. Chainuvati's false statements to Penn concerned alleged conduct off of Penn's campus.

60.    Ms. Chainuvati did not file a Title IX complaint against Mr. Bradley.

61.    Ms. Chainuvati's false statements to Penn did not constitute a Title IX complaint.

62.    Ms. Chainuvati's false statements to Penn did not initiate an investigation by Penn.

63.    Penn's Student Intervention Services provided Mr. Bradley with verbal notice of Ms. Chainuvati's false statements to Penn.

64.    Mr. Bradley was not provided a meaningful opportunity to respond to Ms. Chainuvati's false statements to Penn.

65.    Mr. Bradley did not receive written notice from Penn of Ms. Chainuvati's false statements to Penn.

66.    Mr. Bradley was not provided a hearing to challenge Ms. Chainuvati's false statements to Penn.

67.    After Ms. Chainuvati made the false statements to Penn, Penn's Student Intervention Services sent a letter to Ms. Chainuvati containing a "no-contact directive" that broadly described the false statements made by Ms. Chainuvati and directed the two students not to contact each other (the "No-Contact Letter").

68.    Penn later sent the No-Contact Letter to Mr. Bradley after he asked to see a copy.

69.    The No-Contact Letter referenced a "serious allegation" brought to the Office of Student Intervention Services against Mr. Bradley by Ms. Chainuvati.

70.    Despite receiving the No-Contact Letter, Ms. Chainuvati has continued to contact Mr. Bradley via a group chat using Instagram Direct Message.

71.     The day she received the No-Contact Letter from Penn, Ms. Chainuvati sent the letter to MAD.

72.     Upon information and belief, Ms. Chainuvati falsely stated and/or implied to MAD that Mr. Bradley had stalked and/or harassed her.

73.     Ms. Chainuvati sent the No-Contact Letter to MAD to harm Mr. Bradley's professional relationship with MAD and to harm his career.

74.     After receiving the No-Contact Letter from Ms. Chainuvati, MAD informed Mr. Bradley via email that it had decided to withdraw his 2025 summer internship because MAD had received the No-Contact Letter.

75.     By that time, Mr. Bradley had already withdrawn his acceptance of the Philadelphia architecture firm internship.

76.     Consequently, as a result of Ms. Chainuvati's false statements to Penn and actions in sharing the No-Contact Letter with MAD, Mr. Bradley has no summer internship for 2025.

77.     It is too late for Mr. Bradley to obtain a comparable summer internship position for 2025, as these internships are already filled.

78.     Ms. Chainuvati's false statements to Penn and MAD about Mr. Bradley have caused immediate and serious harm to Mr. Bradley's reputation, and to his current and future academic and professional career, since his lack of a summer internship will make it even harder to secure a position after graduation when all of his colleagues will now have demonstrated experience on their resumes.

79.     Mr. Bradley would have made approximately $10,000.00 - $15,000.00 at the MAD summer internship.

80.     Mr. Bradley reasonably expected that MAD would have made him an offer for permanent employment after graduation from Penn, and he would have received around $75,000 in salary from MAD in his first year. The amount of Mr. Bradley's annual lost future salary caused by Ms. Chainuvati's actions will only increase in future years.

81.     Ms. Chainuvati's actions have seriously and negatively altered the trajectory of Mr. Bradley's architecture career that will cause him significant harm for the foreseeable future.

## Count I - Defamation

82.     Plaintiff realleges and reincorporates Paragraphs 1-81 of his Complaint.

83.     Ms. Chainuvati's statements that Mr. Bradley harassed and stalked her, including, but not limited to statements that Mr. Bradley's attendance at the New York City Half Marathon was an instance of him "following" her, that Mr. Bradley had "followed" her to Trader Joe's, and that Mr. Bradley had "followed" her to a local Starbucks, (the "False Statements") are false.

84.     Ms. Chainuvati's False Statements were designed to hold Mr. Bradley up to ridicule and to damage his personal and professional reputation.

85.     Ms. Chainuvati published the False Statements to Penn.

86.     Ms. Chainuvati published the False Statements to Penn in order to obtain the No-Contact Letter.

87.     The No-Contact Letter referenced a "serious allegation" brought to the Office of Student Intervention Services against Mr. Bradley by Ms. Chainuvati.

88.     Ms. Chainuvati published the False Statements to MAD.

89.     Ms. Chainuvati published the No-Contact Letter to MAD.

90.     Ms. Chainuvati's False Statements were about Mr. Bradley.

91.     Penn understood that the False Statements made by Ms. Chainuvati about Mr. Bradley were negative and harmful and thus defamatory.

92.     MAD understood that the False Statements made by Ms. Chainuvati about Mr. Bradley were so serious that MAD decided to revoke their internship offer to Mr. Bradley.

93.     MAD understood that the No-Contact Letter referenced the False Statements, including negative and harmful statements about Mr. Bradley.

94.     Ms. Chainuvati knew the False Statements were false.

95.     Ms. Chainuvati knew that the "serious allegation" referenced in the "No-Contact" letter was false.

96.     Ms. Chainuvati made the False Statements to Penn in order to harm Mr. Bradley.

97.     Ms. Chainuvati made the False Statements to MAD in order to harm Mr. Bradley.

98.     Ms. Chainuvati published the No-Contact Letter to MAD in order to harm Mr. Bradley.

99.     Mr. Bradley has suffered harm caused by Ms. Chainuvati's publication of the False Statements and No-Contact Letter including, but not limited to, having his paid internship with MAD revoked, harming his academic, personal and professional reputation within Penn and the broader architecture business community, impairment of his reputation and standing in the broader community, and experiencing personal humiliation, and mental anguish and suffering.

100.    As a direct and proximate result of Ms. Chainuvati's actions, Mr. Bradley has sustained substantial damages to his person and reputation, the exact amount of which will be proven at trial, but in excess of $75,000.00.

## Count II - Defamation *per se*

101.    Plaintiff realleges and reincorporates Paragraphs 1-100 of his Complaint.

102.    Ms. Chainuvati's False Statements were false.

103.    Ms. Chainuvati's False Statements are defamatory *per se* because they impute commission of a criminal offense, serious sexual misconduct, and/or conduct or characteristics that adversely affect Mr. Bradley's fitness to properly conduct his profession, trade, or business, including stalking and harassment.

104.    Ms. Chainuvati's False Statements were designed to hold Mr. Bradley up to ridicule and to damage his reputation.

105.    Ms. Chainuvati published the False Statements to Penn.

106.    Ms. Chainuvati published the False Statements to MAD.

107.    Ms. Chainuvati's False Statements were about Mr. Bradley.

108.    Penn understood that the False Statements made by Ms. Chainuvati about Mr. Bradley were negative and harmful and thus defamatory.

109.    MAD understood that the False Statements made by Ms. Chainuvati about Mr. Bradley were negative and harmful and thus defamatory.

110.    Ms. Chainuvati knew the False Statements were false.

111.    Ms. Chainuvati made the False Statements to Penn in order to harm Mr. Bradley.

112.    Ms. Chainuvati made the False Statements to MAD in order to harm Mr. Bradley.

113.    Mr. Bradley has suffered harm caused by Ms. Chainuvati's publication of the defamatory statements including, but not limited to, having his paid internship with MAD revoked, harming his academic, personal and professional reputation within Penn and the broader architecture business community, impairment of his reputation and standing in the broader community, and experiencing personal humiliation, and mental anguish and suffering.

114.    As a direct and proximate result of Ms. Chainuvati's actions, Mr. Bradley has sustained substantial damages to his person and reputation, the exact amount of which will be proven at trial, but in excess of $75,000.00.

### Count III - Tortious Interference with a Prospective Contractual Relationship and Prospective Economic Advantage

115.    Plaintiff realleges and reincorporates Paragraphs 1-114 of his Complaint.

116.    MAD had offered to Mr. Bradley, and Mr. Bradley had accepted, a 2025 summer internship with MAD, forming a contractual and/or prospective contractual relation.

117.    Ms. Chainuvati knew that MAD had offered a 2025 paid summer internship to Mr. Bradley, and that he had accepted the internship.

118.    Ms. Chainuvati believed that MAD would offer Mr. Bradley a permanent job following the internship.

119.    Ms. Chainuvati made false and defamatory statements to Penn and MAD, obtained the No-Contact Letter from Penn, and sent it to MAD for the purpose of harming Mr. Bradley's professional relationship with MAD and other future employers.

120.    Ms. Chainuvati made false and defamatory statements to Penn and MAD, obtained the No-Contact Letter from Penn, and sent it to MAD for the purpose of preventing Mr. Bradley from obtaining a permanent job with MAD and other future employers.

121.    Ms. Chainuvati had no privilege or justification in acting to interfere with Mr. Bradley's internship or future career with MAD and other future employers.

122.    Mr. Bradley has been damaged as a direct and proximate result of Ms. Chainuvati's tortious interference, at least, through the loss of the paid summer internship opportunity and damage to future career prospects with MAD and other future employers.

123.    As a direct and proximate result of Ms. Chainuvati's actions, Mr. Bradley has sustained substantial damages to his person and reputation, the exact amount of which will be proven at trial, but in excess of $75,000.00.

### Count IV - Tortious Interference with a Contractual Relationship

124.    Plaintiff realleges and reincorporates Paragraphs 1-123 of his Complaint.

125.    MAD had offered to Mr. Bradley and Mr. Bradley had accepted a 2025 paid summer internship with MAD.

126.    Ms. Chainuvati knew that MAD had offered a 2025 paid summer internship to Mr. Bradley, and that he had accepted the internship.

127.    Ms. Chainuvati believed that MAD would offer Mr. Bradley a permanent job following the internship.

128.    Ms. Chainuvati made false and defamatory statements to Penn and MAD, obtained the No-Contact Letter from Penn, and sent it to MAD for the purpose of harming Mr. Bradley by causing his paid internship with MAD to be revoked.

129.    Ms. Chainuvati made false and defamatory statements to Penn and MAD, obtained the No-Contact Letter from Penn, and sent it to MAD for the purpose of harming Mr. Bradley by preventing him from obtaining a permanent job with MAD following the internship.

130.    Ms. Chainuvati had no privilege or justification in acting to interfere with Mr. Bradley's internship or future career with MAD.

131.    Mr. Bradley has been damaged as a direct and proximate result of Ms. Chainuvati's tortious interference with his contractual relationship with MAD, at least, through the loss of the paid summer internship opportunity and damage to future career prospects with MAD and other future employers.

14

132.    As a direct and proximate result of Ms. Chainuvati's actions, Mr. Bradley has sustained substantial damages to his person and reputation, the exact amount of which will be proven at trial, but in excess of $75,000.00.

**Count V - Invasion of Privacy - False Light**

133.    Plaintiff realleges and reincorporates Paragraphs 1-132 of his Complaint.

134.    Ms. Chainuvati publicized the False Statements.

135.    Ms. Chainuvati's False Statements placed Mr. Bradley in a false light by majorly misrepresenting his character, history, and activities.

136.    The false light in which Mr. Bradley was placed would be highly offensive to a reasonable person because the False Statements falsely imputed serious criminal conduct to Mr. Bradley.

137.    Ms. Chainuvati had knowledge of or acted in reckless disregard as to the falsity of the publicized statements and the false light in which she placed Mr. Bradley.

138.    Mr. Bradley has been harmed by Ms. Chainuvati placing him in a false light, including, but not limited to, having his internship with MAD revoked, harming his academic, personal and professional reputation within Penn and the broader architecture business community, impairment of his reputation and standing in the broader community, and experiencing personal humiliation, and mental anguish and suffering.

139.    As a direct and proximate result of Ms. Chainuvati's actions, Mr. Bradley has sustained substantial damages to his person and reputation, the exact amount of which will be proven at trial, but in excess of $75,000.00.

**Count VI – Intentional Infliction of Emotional Distress**

140.    Plaintiff realleges and reincorporates Paragraphs 1-139 of his Complaint.

15

141.    Ms. Chainuvati's conduct in making false and harmful statements about Mr. Bradley to Penn and MAD for the purpose of sabotaging Mr. Bradley's reputation and career was extreme and outrageous.

142.    Ms. Chainuvati acted intentionally and recklessly in making false and harmful statements about Mr. Bradley to Penn and MAD.

143.    Mr. Bradley has suffered severe emotional distress, mental anguish, and humiliation as a result of Ms. Chainuvati's intentional conduct.

144.    As a direct and proximate result of Ms. Chainuvati's actions, Mr. Bradley has sustained substantial damages to his person and reputation, the exact amount of which will be proven at trial, but in excess of $75,000.00.

WHEREFORE, Plaintiff Jack Bradley respectfully requests that the Court enter a Judgment:

A.  Awarding Plaintiff money damages to be determined at trial but not less than $75,000.00, together with his costs and fees of this lawsuit and punitive damages;

B.  Pursuant to Fed. R. Civ. P. 65, ordering injunctive relief mandating that Defendant fully retract and repudiate the false statements she made about Plaintiff and provide an affirmative statement that Defendant is fully aware the statements she made about Plaintiff are untrue, fabricated, and were falsely made by Defendant to cause harm to and damage the reputation of Plaintiff; and

C.  Awarding Plaintiff all other legal, injunctive, and equitable relief that Plaintiff may be entitled to.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal

Rules of Civil Procedure.

Respectfully submitted,

/s/ Samantha K. Harris
Samantha Harris
**ALLEN HARRIS LAW**
PO Box 673
Narberth, PA 19072
Telephone: (610) 634-8258
Email: sharris@allenharrislaw.com

Susan C. Stone (pro hac vice application
forthcoming)
Kristina W. Supler (pro hac vice application
forthcoming)
Michael D. Hoenig (pro hac vice application
forthcoming)
Anna E. Bullock (pro hac vice application
forthcoming)
**KOHRMAN JACKSON & KRANTZ, LLP**
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, OH  44114-1793
Telephone: (216) 696-8700
Facsimile:  (216) 621-6536
Email: scs@kjk.com; kws@kjk.com;
mdh@kjk.com; aeb@kjk.com

*Counsel for Plaintiff*