UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACK BRADLEY, | ) | CASE NO. 2:25-CV-03061 |
| | ) | |
| *Plaintiff*, | ) | JUDGE TIMOTHY J. SAVAGE |
| | ) | |
| v. | ) | |
| | ) | |
| FASAI CHAINUVATI, | ) | |
| | ) | |
| *Defendant*. | ) | |

**REPORT OF RULE 26(f) MEETING**

In accordance with Fed. R. Civ. P. 26(f), counsel for the parties conferred on September 19, 2025 and submit the following report of their meeting for the Court's consideration:

**1. Discussion of Claims, Defenses and Relevant Issues**

**A. Factual Background Supporting Plaintiff's Claims**

Plaintiff and Defendant are both graduate students at University of Pennsylvania ("Penn") and first met in the fall semester of 2023. The two became friends and even dated briefly in December 2023 and/or January 2024. They remained friendly after the breakup, continued to have mutual classes and collaborated on several projects.

In the spring of 2025, Defendant became upset with Plaintiff because he had been offered a paid internship at MAD Architects ("MAD") where she would also be interning. Defendant thought that Plaintiff would be a more attractive long-term job candidate because he is a white American-born citizen, and she is a woman and an international student. She also thought that Plaintiff would spend all his time working and make her look bad. Defendant became even more upset when Plaintiff formally accepted the MAD internship offer.

It was Defendant's anger directed toward Plaintiff and her insecurity that he would outperform her at MAD which fueled her to make malicious, intentional and false statements about him. For example, Defendant knowingly made false claims to Penn that Plaintiff followed her to the New York City Marathon when in reality all actions and invitations concerning the marathon were initiated by her. She also falsely told Penn that Plaintiff had followed her to two locations. One of those locations, Plaintiff and Defendant went to together and the other is a spot across the street from the Penn architecture building that is frequented by Penn students for that reason. As a result of Defendant's false statements, Penn issued a no contact directive and Plaintiff was given no opportunity to object to it. In turn, Defendant immediately sent the no contact directive to MAD seeking to have Plaintiff's internship revoked. Unfortunately, she succeeded.

Plaintiff also repeated these false allegations outlined above to other architecture graduate students, Penn faculty and staff, and external architecture professionals. This has damaged Plaintiff's personal and professional relationships and reputation. He lost relationships with his core friends in the graduate program who no longer communicate or socialize with him. Plaintiff's ability to obtain the necessary recommendations for future endeavors was also hindered. In particular, the Penn employee who recommended Plaintiff to MAD is in an uncomfortable position in that a student he recommended had an offer rescinded which is unusual and will make him less likely to recommend Plaintiff in the future. Additionally, Plaintiff lost potential professional connections and post-graduation opportunities due to the damage to his personal and professional reputation caused by Defendant.

B.  **Factual Background Supporting Defendant's Defenses**

Plaintiff and Defendant had a brief romantic relationship that was ended by Defendant. Notwithstanding multiple clear messages, Plaintiff continued to pursue a romantic

2

relationship with defendant. Plaintiff was offered and accepted a summer internship with a prestigious Philadelphia architecture firm. Defendant received and accepted an offer from a prestigious Los Angeles architecture firm. Later, Plaintiff applied to the Los Angeles architecture firm and received an offer and told Defendant about the offer. Defendant told Plaintiff she would be uncomfortable working with him in the same office and asked him to stick with the offer he had already accepted from the Philadelphia firm. When Plaintiff refused, Defendant spoke to her academic advisor and student services at Penn who, in turn spoke with Plaintiff. Based upon the accurate facts communicated by Defendant to Penn Student Services, it issued a mutually agreed upon "no-contact" letter that prohibited them from working together. The letter was sent to the Los Angeles firm that honored the first offer that was made to Defendant and offered Plaintiff a later internship that he apparently has not pursued.

Defendant made no false statements about Plaintiff to Penn Student Services or MAD. Plaintiff chose to reject an offer he already had in hand and has suffered no damage to his reputation beyond he self-imposed damage caused to both parties by the filing of this lawsuit.

C. Primary Issues

The primary issues in this case are:

1. Whether the Defendant published false statements of fact about Plaintiff to a third party, and whether those statements caused harm to the Plaintiff's reputation.

2. Whether the statements fall into a recognized category of defamation per se (e.g., allegations of criminal conduct, professional incompetence, or moral turpitude), in which case damages may be presumed without the need for proof of actual harm.

3. Whether the Defendant intentionally and unjustifiably interfered with an existing, legally binding contract between the Plaintiff and a third party, resulting in a breach of that contract and damages to the Plaintiff.

4. Whether the Defendant intentionally interfered with a valid business expectancy or prospective economic advantage between the Plaintiff and a third party, without justification, and whether that interference caused actual harm or loss of the expectancy.

5. Whether the Defendant unlawfully intruded upon the Plaintiff's solitude or seclusion, publicly disclosed private facts, placed the Plaintiff in a false light, or misappropriated the Plaintiff's name or likeness, resulting in damage to the Plaintiff.

6. Whether the Defendant engaged in extreme and outrageous conduct, intentionally or recklessly, that caused the Plaintiff to suffer severe emotional distress.

7. Whether the Defendant's conduct was willful, wanton, malicious, or in reckless disregard of the Plaintiff's rights, thereby justifying an award of punitive damages.

### D. Information Needed in Discovery

Plaintiff contends the information needed in discovery is the full scope and extent of the false statements made by the Defendant about Plaintiff. This includes identifying the specific content of each alleged defamatory statement, the context in which it was made, the dates and mediums of publication (e.g., oral, written, online, or social media), and the individuals or entities to whom the statements were communicated. Defendant contends no false statements were made and Plaintiff had no basis for initiating this action without actual evidence.

### E. Anticipated Motions and Timing

The parties anticipate motions for summary judgment and propose April 17, 2026 as the filing deadline.

### 2. Informal Disclosures

Pursuant to Fed. R. Civ. P. 26(a)(1)(A) and this Court's Order entered on September 8, 2025, the parties exchanged initial disclosures on September 22, 2025. The parties identified the

parties with identifiable information and the documents, electronically stored information and tangible things that may be used in support of their claims or defenses. Plaintiff also provided a computation of damages. No other informal disclosures are expected.

3. **Formal Discovery**

The parties will exchange fact discovery with written discovery requests by October 3, 2025. Depositions will follow the exchange of written discovery. The parties propose a fact discovery deadline of February 27, 2026, which is 150 days from the Fed. R. Civ. P. 16 Pretrial.

The parties have agreed to preserve all electronically stored information currently in their possession as of the date Plaintiff's Complaint was filed. If electronically stored information is inadvertently produced that contains privileged information or attorney work product, it shall be immediately returned to the party who produced it and all copies destroyed by the receiving party. Electronically stored information shall be produced to the requesting party as image files (e.g. PDF, JPEG or TIFF) unless otherwise agreed. When the image file is produced, the producing party will preserve the integrity of the electronically stored information's contents, such as the original formatting, its metadata, and where applicable, its revision history. After production in image file format, the requesting party must demonstrate particularized need for production of electronically stored information in native format.

4. **Electronic Discovery**

Electronic discovery will be conducted in conjunction with formal discovery and as outlined in No. 3 above. No additional standards are required.

5. **Expert Witness Disclosures**

The parties propose that Plaintiff's deadline to identify experts and produce written reports by February 27, 2026, and Defendant's deadline for same be April 17, 2026.

It is anticipated that the testimony of the experts identified will focus on damages. Expert depositions may be necessary, but the parties cannot confirm this until the disclosure deadlines have passed.

6. **Early Settlement or Resolution**

The parties agree to explore early settlement or resolution. On July 9, 2025, the case was referred to Magistrate Judge Scott W. Reid for settlement purposes. On September 17, 2025, Magistrate Judge Reid scheduled a Settlement Conference for December 16, 2025. In addition, Plaintiff submitted a formal settlement demand to Defendant on September 8, 2025 and Defendant anticipates responding prior to the Fed. R. Civ. P. 16 Pretrial. The parties will continue to discuss settlement and resolution options prior to the Settlement Conference.

7. **Trial Date**

The parties request an August 2026 trial date.

8. **Other Matters**

None at this time.

Dated September 24, 2025

Respectfully submitted,

| | |
|---|---|
| */s/ Susan C. Stone* | */s/ Robert B. Bodzin* |
| Susan C. Stone* | Robert B. Bodzin |
| Kristina W. Supler* | Francis G. Notarianni |
| Michael D. Hoenig* | **KLEINBARD LLC** |
| Anna E. Bullock* | Three Logan Square |
| **KOHRMAN JACKSON & KRANTZ** | 1717 Arch St., 5th Floor |
| 1375 E. 9th St., 29th Floor | Philadelphia, PA 19103 |
| Cleveland, OH 44114 | Telephone: (215) 568-2000 |
| Telephone: (216) 696-8700 | Email: rbodzin@kleinbard.com |
| Email: scs@kjk.com; kws@kjk.com; mdh@kjk.com; aeb@kjk.com | fnotarianni@kleinbard.com |
| (**Admitted pro hac vice*) | *Attorneys for Defendant Fasai Chainuvati* |

6

Samantha Harris
**ALLEN HARRIS LAW**
P.O. Box 673
Narberth, PA 19072
Telephone: (610) 634-8258
Email: sharris@allenharrislaw.com

*Attorneys for Plaintiff Jack Bradley*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that the foregoing *Report of Rule 26(f) Meeting* was filed on this 24th day of September, 2025. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Susan C. Stone*
Susan C. Stone